# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

ANDREW MARTINEZ,              )
                             )
       Plaintiff,              )
                             )
v.                           )          No. 21-03009-CV-S-DPR
                             )
ROBERTS SINTO CORPORATION,    )
                             )
       Defendant.              )

## ORDER

Before the Court are Defendant's Motions in Limine.  (Doc. 95.)  Plaintiff filed an Opposition.  (Doc. 102.)  The Court addresses the relief requested by Defendant in order as follows:

**1.      Reference to the financial or corporate status of Defendant should be excluded**

Defendant moves to exclude any commentary on its financial or corporate status as immaterial, distracting, and unfairly prejudicial.    Plaintiff responds that it "has no intention or desire to inappropriately reference the corporate size or wealth of Defendant at trial."  (Doc. 102 at 2.)  However, Plaintiff objects to Motion 1 as vague and overbroad and asserts that entry of a blanket pretrial order would be inappropriate."

Upon review, Motion 1 is **GRANTED**.  Any reference to Defendant's capacity as a corporate entity, its status as a subsidiary, or its or its parent company's size or financial assets is excluded from trial.

**2.      Any reference to Defendant's liability insurance**

Defendant Motion 2 is **GRANTED** as unopposed.

**3.      "Golden Rule" arguments by Plaintiff's counsel should be excluded**

Defendant moves to exclude any "Golden Rule" type arguments at trial, requesting that Plaintiff's counsel be prevented from making any reference to the jury about "placing themselves" in Plaintiff's situation and/or circumstances. Plaintiff responds that it has no intention or desire to make such argument at trial, but objects to Motion 3 as vague, overbroad, and premature.

Upon review, Motion 3 is **GRANTED**. Any "Golden Rule" argument suggesting the jury should place themselves in Plaintiff's situation and/or circumstances is excluded from trial.

## 4. Evidence related to OxMaster Mixer manufactured by Wirtz should be precluded

Defendant moves to exclude any evidence that OxMaster Mixers made by Wirtz allegedly have a different interlock than the one designed by Defendant, arguing such evidence is irrelevant. Plaintiff responds that the timed interlock used by the OxMaster Mixer is directly relevant as it is affirmative proof of a reasonable alternative design. By law, in a strict product liability case, a Missouri plaintiff may, but is "not required to prove the existence of a reasonable alternative design." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 446 (8th Cir. 2008). Therefore, Defendant's Motion 4 is **DENIED.**

## 5. Reference to sales quotation describing guard as "easy access" is inadmissible

Defendant moves to exclude evidence from its sales quotation referring to "[h]inged 'easy access' solid metal discharge door guards." Defendant argues "there is no evidence to suggest anyone at NorthStar relied on this description of the guard or was even aware of it." Plaintiff responds that this "is Defendant's own language to describe [its] own product," and argues it is relevant to the element of "reasonably anticipated use." The Court agrees that whether Plaintiff relied on this language is not the proper inquiry, as the question is whether "the product was defective and dangerous *when put to a reasonable use anticipated by the manufacturer*." *Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 17 (Mo. App. 2006) (emphasis added). Here, the use of this

language by Defendant in its own literature is relevant to the issue of how it anticipated the product would be used. Accordingly, Defendant's Motion 5 is **DENIED**.

**6.      Alex Rigoni cannot opine more likely than not the bolts were not present**

Defendant moves to exclude Plaintiff's engineering expert, Alex Rigoni, from opining that "more likely than not" the bolts were not present on the discharge door guard when the machine was installed. Defendant argues that in doing so, Mr. Rigoni is impugning the credibility of fact witness Pat Patton. However, there is factual support in the record for the opinions and/or conclusions of Mr. Rigoni that Defendant seeks to exclude. As this Court has advised previously, "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." Fed. R. Evid. 702 advisory committee's note (2000). To that end, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993). Therefore, Defendant's Motion 6 is **DENIED**.

**7.      Mr. Berry cannot give new opinions on potential medical issues**

Defendant moves to exclude Plaintiff's prosthetic expert, Mr. Berry, from opining that someone who does not use a prosthetic will become one-hand dominant and that their body is not weighted properly thus leading to physical problems (such as back issues, balance issues, alignment issues). Defendant argues that Mr. Berry is not qualified to give this opinion and that he did not provide these opinions during discovery, making these new and therefore inadmissible opinions. Upon review, the Court agrees that this is a new opinion presented during the trial preservation deposition, and not a supplement or correction upon information later acquired, and therefore Defendant's Motion 7 is **GRANTED**.

3

**8. Nathan Clemons cannot simultaneously testify in two capacities**

Defendant moves to preclude Nathan Clemons from testifying as both NorthStar's corporate designee and in his own individual capacity, arguing it would confuse the jury. Upon review, the Court disagrees, as Mr. Clemons is a fact witness, and the fact that he may have personal knowledge of some of the matters to which he may testify is not improper. Accordingly, Defendant's Motion 8 is **DENIED**.

**9. Dr. Sky's new opinions are inadmissible**

Defendant moves to exclude the opinion of Dr. Adam Sky presented during his trial preservation deposition as to the benefit a person would derive from wearing a prosthetic and that Plaintiff likely has brain chemistry changes and anatomical changes due to his mental health diagnoses. Defendant argues this opinion was not included in Dr. Sky's report nor during his discovery deposition. Plaintiff responds that objections to trial testimony are not proper for motions in limine. First, it is the undersigned's view that Defendant's motion allows the Court to consider an issue that would arise during trial, thus saving time and expense. And, Defendant's motion is well-taken, as this opinion is neither a supplement nor a correction upon information later acquired, and as such is inadmissible. Therefore, Defendant's Motion 9 is **GRANTED**.

**10. Amount of medical bills**

As to medical expenses "charged" by health care providers, Motion 10 is **GRANTED** as unopposed. This ruling does not apply to the actual amounts paid to health care providers.

**11. Evidence that Defendant had a duty to use a certain interlock or otherwise guard the discharge door area**

Defendant moves to exclude evidence as to whether it had an obligation to utilize a certain interlock or duty to otherwise guard against the subject hazard at the time it manufactured the product, arguing it would be irrelevant in this strict liability action. According to Defendant, this

4

should include evidence of the "fix" NorthStar implemented after the incident. Upon review, the Court agrees that evidence as to "duty" are irrelevant in this strict product liability action. However, evidence of a reasonable alternative design is relevant to the issue of whether the product's design was "unreasonably dangerous." And, evidence of subsequent remedial measures taken by a third party is admissible. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990). Accordingly, Motion 11 is **DENIED**.

**12.    Evidence Defendant had a duty to warn**

Defendant moves to exclude any evidence or argument regarding Defendant's duty to warn in this strict liability case. Plaintiff agrees that arguments about "duty" are irrelevant in this case but asserts that he should be allowed to present evidence about the lack of an adequate warning.

Accordingly, as to the existence of any "duty" to warn on behalf of Defendant, Motion 12 is **GRANTED**. This ruling does not preclude Plaintiff from presenting evidence and argument as to whether the product was "sold without an adequate warning" pursuant to Section 537.760(3)(b).

**13.    Any FMEA evidence and related documents are inadmissible**

Defendant moves to exclude evidence regarding any Failure Mode and Effects Analysis (FMEA) conducted by Defendant with regard to its mixers in general and the specific mixer at issue, claiming such evidence is irrelevant to a strict liability claim in Missouri. "The only question before the jury in a strict liability action is whether the product was defective not whether the manufacturer knew it was defective or was negligent." *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 332 (Mo. App. 2000). Accordingly, the Court agrees that exclusion of any FMEA evidence is consistent with Missouri law regarding strict liability, as such evidence would relate to Defendant's conduct, which is not at issue here.

5

Therefore, Motion 13 is **GRANTED**.

**14.    Any reference to or argument that machine is otherwise dangerous**

Defendant moves to exclude evidence related to any part of the mixer other than the discharge door guard/area.   According to Defendant, Plaintiff was not injured by any other part of the machine and thus whether any other part of the mixer is dangerous is irrelevant.   Plaintiff counters that Motion 14 is vague, overbroad, and premature, and that Section 537.760 allows the introduction of any evidence that the product was defective and unreasonably dangerous.

Upon review, the Court will defer ruling on Motion 15 until trial, on an issue-by-issue basis.

**15.    Any suggestion or argument that Defendant should have contacted NorthStar after mixer was installed**

Defendant moves to exclude any evidence/argument that it should have contacted NorthStar regarding the product after transfer of the product in 2008 as irrelevant.   The Court agrees, and Motion 15 is **GRANTED**.

**16.    Mr. Rigoni cannot opine that it was reasonably foreseeable that the bolts would be removed and never replaced**

Defendant moves to exclude the opinion of Mr. Rigoni that it was reasonably foreseeable that the bolts on the guard would be removed and never replaced.   Upon review, there is a basis for this opinion beyond that which is argued by Defendant, and the opinion specifically goes to the issue of whether the product was being put to a reasonably anticipated use.   Therefore, Motion 16 is **DENIED**.

**17.    Unauthenticated web page document is inadmissible**

Defendant moves to exclude a web page document purporting to be the material data sheet for material used for the "danger" sticker affixed to the product, arguing the document is not

properly authenticated per Rule 901. Plaintiff responds that the document is self-authenticating under Rule 902, with no further argument or facts in support. As such, Plaintiff has admitted the document has no extrinsic evidence of authenticity under Rule 901 but has not explained how the document meets one of the categories of documents that are self-authenticating. Therefore, Motion 17 is **GRANTED**.

 **IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: May 19, 2022