# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| ANDREW MARTINEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21-03009-CV-S-DPR |
| ROBERTS SINTO CORPORATION, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for Sanctions (doc. 119) and Plaintiff's Cross Motion for Sanctions (doc. 125). Upon review, Defendant's Motion for Sanctions will be granted in part and denied in part, and Plaintiff's Cross Motion for Sanctions will be denied.

### I. Background

On October 1, 2018, Plaintiff suffered an injury to his right hand while operating a negative paste mixer, which is part of a battery paste preparation system, designed, manufactured, and installed by Defendant. On January 14, 2021, Plaintiff filed this action against Defendant, claiming strict product liability in Count I and negligence in Count II.[1] Plaintiff's strict product liability claim is based on defective design and failure to warn.

On April 13, 2021, Plaintiff served his initial disclosures to Defendant pursuant to Fed. R. Civ. P. 26(a)(1), which included 208 pages of "PT and Doctor Reports" identified as "MARTINEZ 000001-000208." (Doc. 119-1.) On May 6, 2021, the Court entered a Scheduling and Trial Order, setting forth deadlines of April 16, 2021 for the parties' initial disclosures under Rule 26(a)(1), and October 29, 2021 for all discovery. (Doc. 17.) In his July 7, 2021 Response to Defendant's

---

[1] On April 7, 2022, summary judgment was entered in favor of Defendant as to Plaintiff's claim for negligence. (Doc. 81.)

Interrogatories, when asked for the names and addresses of all doctors, hospitals or health care providers who have treated, examined, or attended Plaintiff as a result of the subject incident, along with details regarding the examinations/treatments, Plaintiff wrote, "[s]ee medical records identified as MARTINEZ 0000001-000208." (Docs. 31, 119-2.) And, in his July 7, 2021 Response to Defendant's Request for Production of Documents, which sought any records and bills generated by a doctor, physician, chiropractor, therapist or other health care provider for treatment in connection with the subject incident, Plaintiff again directed Defendant to, "[s]ee MARTINEZ 000001-000208" and added six additional pages, described as "MARTINEZ 001930-001935." (Docs. 31, 119-3.) Defendant also asked Plaintiff to execute an authorization to obtain medical records, to which Plaintiff objected, stating, "Defendant has been provided with all records for medical treatment arising out of the Subject Accident. See Martinez 000001-000208." *Id*. At no time thereafter did Plaintiff supplement his disclosures or discovery responses.

On August 6, 2021, by agreement of the parties, the deadline to complete discovery was extended to December 31, 2021, and the five-day jury trial was reset to June 6, 2022. (Doc. 37.) Then, on May 9, 2022, over four months after the close of discovery and four weeks before trial was to commence, Plaintiff filed a Trial Exhibit List which included as exhibits 45 through 70 medical records with no Bates IDs, many of which were from providers not included in the 208 pages of medical records previously produced. Seeking clarification, Defendant contacted Plaintiff, who then provided 1251 pages of medical records and bills to Defendant on May 17, 2022.

Two days later, at the pretrial conference on May 19, 2022, Defendant objected to these additional medical records as untimely. (Doc 117 at 14.) In response, Plaintiff said, "I don't have a good explanation for that other than to tell you that we have been working with third-party

2

vendors to get them and there's been delays with vendors getting … the records to us." *Id*. at 32-33. The Court sustained the objection and excluded the medical records that were disclosed untimely, other than those previously disclosed and described as MARTINEZ 000001-000208. *Id*. at 34.

Then, on May 26, 2022, Defendant filed the instant motion for sanctions, asserting that the undisclosed records contain information relevant to its defense in this action, as it refutes Plaintiff's claims and damages, specifically regarding what Plaintiff was doing at the time of the incident and his alleged depression. Plaintiff does not contradict Defendant's assertions, but filed an opposition in response along with a cross motion for sanctions, claiming that the additional medical records at issue were disclosed to Defendant on December 15, 2021, during Defendant's deposition of Plaintiff's vocational expert, Phillip Eldred. Plaintiff also argues that the matters cited by Defendant as relevant to its defense are "all unreliable hearsay."

Specifically, Plaintiff asserts that defense counsel asked Mr. Eldred if his file included copies of medical records that [he] relied on, to which Mr. Eldred responded yes, and produced a DVD+R (the "disc") marked "Andrew Martinez." Plaintiff further states that this disc contained 1230 pages, or 98.32% of the medical records at issue. Defense counsel responds, and the Court finds, that Defendant was unaware that the disc contained additional medical records apart from the 208 pages of medical records initially produced by Plaintiff and never supplemented. Notably, when he received the disc, defense counsel asked plaintiff's counsel, Joel Block, for confirmation that it was "the documents that I guess you guys provided, didn't you?", to which plaintiff's counsel replied, "[y]es sir." Under these circumstances, the Court finds that Defendant reasonably relied on Plaintiff's assertions and assumed the disc did not contain any medical records beyond the 208 pages that were initially disclosed and never supplemented by Plaintiff, based on Plaintiff's

3

subsequent repeated assertions that those 208 pages were "all records for medical treatment arising out of the Subject Accident" by Plaintiff in his discovery responses, coupled with Plaintiff's refusal to execute a medical authorization. Although Plaintiff contends that Defendant knew that it had received all the medical records via the disc prior to the end of discovery, the Court does not agree. Such a conclusion would have required defense counsel to assume that plaintiff's counsel was not fully forthcoming in its prior discovery responses and to waste valuable time reviewing a disc containing what he reasonably believed contained only 208 pages of medical records that he had already received and reviewed. Notably, Defendant conducted twelve depositions between July and December 2021, and no other deponent, other than Plaintiff's vocational expert, produced these additional medical records at their deposition. Also, Defendant conducted these depositions with no knowledge of the additional medical records.

Notwithstanding Plaintiff's attempt to lay blame for this situation on Defendant, Plaintiff offers no justification for his own failure to disclose over 1000 pages of medical records in a personal injury lawsuit wherein he claims serious injuries and damages. Notably, the vast majority of the undisclosed medical records at issue were in Plaintiff's possession prior to the filing of the lawsuit. (Docs. 120-4, 120-5.) At the motion hearing, Plaintiff stated this failure was due to a lack of attention to detail and "inadvertence," claiming some records were put into the wrong file, and continued to insist the records were "produced" to Defendant six months before trial via the disc.

In consideration of the serious issues raised and relief requested by Defendant in the Motion for Sanctions, the Court postponed the June 6, 2022 trial, to conduct a motion hearing and allow time for the potential relief contemplated.

## II.  Legal Standard[2]

Federal Rule of Civil Procedure 26 imposes various affirmative duties that regulate the discovery process, three of which are relevant to the present motions. First, Rule 26(a) requires the initial disclosure, "without awaiting a discovery request," of "all documents … that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Second, Rule 26(e) establishes an affirmative duty to timely supplement disclosures and discovery responses. Specifically, Rule 26(e)(1)(A) requires a party to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Third, Rule 26(g) establishes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment; *see also Garrett v. Albright*, No. 4:06-CV-4137-NKL, 2008 WL 681766, at *8 (W.D. Mo. Mar. 6, 2008) (Rule 26(g) "imposes on each party and their counsel a duty to responsibly engage in pretrial discovery"). In particular, Rule 26(g)(1) requires that every disclosure and discovery response "be signed by at least one attorney of record." This signature "certifies that to the best of the person's knowledge, information and belief formed *after a reasonable inquiry*" that a disclosure is "complete and correct as of the time it is made" and that a discovery response is "consistent with the rules and existing law." Fed. R. Civ. P. 26(g)(1)(A)–(B) (emphasis added).

The Rule 26(g) "duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment. What is "reasonable" for Rule 26(g) purposes is "[u]ltimately ... a matter for the court to decide on the

---

[2] *White v. CitiMortgage, Inc.*, Case No. 15-00289-CV-W-SRB, 2018 WL 4926306 (W.D. Mo. Oct. 10, 2018).

totality of the circumstances." *Id.* The Rule 26(g) signature requirement "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection" and "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.*

The Rules pertinent to discovery also authorize—and sometimes require—courts to impose sanctions as a remedy for discovery abuse. The general purpose of discovery sanctions is "to penalize those whose conduct may be deemed to warrant them and deter those who might be tempted to such conduct in the absence of such a deterrent." *Sec. Nat'l Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)) (cleaned up). Accordingly, Rule 26(g)(3) states that "if a certification violates [Rule 26(g)] *without substantial justification*, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." (emphasis added). Also, Rule 37(c) provides that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e)" and the failure is not "substantially justified" or "harmless," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)–(B). Rule 37(c) gives a court "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" if a party fails to comply with Rule 26. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The purpose of sanctions under Rules 26(g) and 37(c) is "to deter abuse and compensate the opposing party for all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (quoting *In re Stauffer Seeds*, 817 F.2d 47, 50 (8th Cir. 1987)); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) ("The

6

Case 6:21-cv-03009-DPR   Document 144   Filed 03/29/23   Page 6 of 10

disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37").

If a court finds that discovery sanctions are warranted, the court must then determine what sanctions are appropriate. When determining appropriate discovery sanctions, the court "should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711–12 (8th Cir. 2003)).

Some district courts in other circuits have imposed sanctions in the form of an instruction to the jury that probative information was withheld in violation of discovery rules. *See Fanelli v. BMC Software, Inc.*, No. 1:11-CV-436-LMM, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (ordering discovery sanctions in the form of "provid[ing] a special instruction to the jury prior to the introduction of [a witness's] testimony" explaining the defendant's failure to produce documents relevant to a phone conversation that the witness had with the plaintiff until three years after discovery had opened); *F.T.C. v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN, 2014 WL 317781, at *12 (D. Nev. Jan. 28, 2014), *objections overruled sub nom. F.T.C. v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN, 2014 WL 12788195 (D. Nev. July 16, 2014) (finding that the plaintiff violated Rules 26(a) and 26(e) and allowing the defendants to "inform the jury of the plaintiff's failure to comply with its initial disclosure obligations" until after the close of discovery); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, No. 09-1350, 2013 WL 6577401 at *12 (W.D. Pa. Dec. 16, 2013), *aff'd*, 598 F. App'x 109 (3d Cir. 2015) (denying motion for new trial on several grounds, including that "the court's jury instruction that defendants were required but failed to produce the written documentation ... was appropriate and within the court's discretion").

7

### III. Discussion

#### a. Whether Sanctions Are Warranted

Sanctions against Plaintiff are clearly warranted here. Plaintiff failed to directly provide over 1000 pages of relevant medical records to Defendant until twenty days before trial. Plaintiff asserted repeatedly that there were only 208 pages of medical records that were initially disclosed, and never supplemented those records, despite having the majority of them in his possession prior to filing the action. The Court is unconvinced by Plaintiff's attempts to shift the blame to Defendant for this matter. Defendant did what it was required to do by serving discovery requests on Plaintiff and relying in good faith on Plaintiff's responses to said discovery requests. Further, the Court finds Defendant's decision to not review the disc was reasonably based in reliance on Plaintiff's repeated assertions in its discovery responses and at the deposition.

Accordingly, the Court finds that, based on the totality of the circumstances, Plaintiff failed to comply with Rules 26(a), (e) and (g). The additional medical records are both relevant to Plaintiff's claims under Rule 26(a) and responsive to Defendant's discovery requests. As such, Plaintiff should have produced them in his initial disclosures, his discovery responses, or through a timely supplement to his discovery responses, far sooner than three weeks before the start of trial. This delay in producing the additional medical records is also a "failure to provide information" within the meaning of Rule 37(c)(1). *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose").

Moreover, the failure was neither substantially justified nor harmless. Plaintiff's vague claim that the failure was "inadvertent" and finger-pointing at outside vendors in no way provides justification, let alone a substantial one. This is particularly so when the vast majority of the medical records were in Plaintiff's possession prior to the filing of the civil action, and a reasonable

inquiry by plaintiff's counsel pursuant to Rule 26(g) would have revealed the additional medical records requiring disclosure.

Nor was the failure harmless. Per the samples provided by Defendant, the previously undisclosed medical records reveal new information that is highly relevant to its defenses in this matter. Specifically, EMS records from the day of the incident indicate Plaintiff may have stated that he was performing an entirely different task when he was injured than that which he previously stated at his deposition, going directly to the issue of whether the product was being used in a manner reasonably anticipated. Also, previously undisclosed examination notes contradict Plaintiff's claim that he has major depressive disorder due to the injury, relevant to the issue of damages. Defendant was unaware of these pieces of relevant information, and potentially others, and was unable to investigate them further, use them at the numerous depositions it conducted, or consider them in its defenses. As a result, due to the surprise and prejudice caused by the last-minute disclosure, the Court cannot find that Defendant's failure was harmless. And, considering the deterrent and compensatory purposes of discovery sanctions, the Court finds that sanctions are warranted.

b. **Whether the Requested Sanctions Are Appropriate**

Defendant seeks dismissal, but the Court does not agree that such a harsh remedy is appropriate. In the alternative, Defendant seeks a new scheduling order reopening discovery to allow Defendant to re-depose at a minimum, Plaintiff, Plaintiff's experts (Drs. Sky and Fox, Dale Berry, and Alex Rigoni), and NorthStar Battery's corporate designee, Plaintiff's execution of an authorization allowing Defendant to obtain all relevant medical records, and Defendant's costs and fees for the "wasted defense." The Court finds this sanction, modified to provide for Defendant's costs and fees incurred in re-deposing necessary witnesses previously deposed, as well as the costs

and fees incurred in preparing and litigating the Motion for Sanctions, appropriate under these circumstances. In addition, as contemplated by Rule 37(c)(1)(B), the Court will impose the sanction of informing the jury of Plaintiff's failure to disclose the medical records.

### IV.     Conclusion

It is therefore **ORDERED** that Defendant's Motion for Sanctions is **GRANTED IN PART AND DENIED IN PART**. On or before April 28, 2023, the parties shall submit a joint proposed amended scheduling order setting forth a deadline for Defendant to re-depose Plaintiff, Plaintiff's experts (Drs. Sky and Fox, Dale Berry, and Alex Rigoni), and NorthStar Battery's corporate designee, along with a proposed trial date. Plaintiff shall execute an authorization allowing Defendant to obtain all relevant medical records. Plaintiff shall pay the reasonable attorney's fee and costs for defense counsel to prepare and litigate the Motion and to re-depose the six witnesses listed above. Lastly, the Court will provide a special instruction to the jury prior to the initial introduction of medical evidence at trial. The parties are advised that this Order does not preclude Defendant from reasonably investigating relevant new information contained in the previously undisclosed medical records, or from moving for leave to conduct additional discovery upon a showing of good cause.

It is further **ORDERED** that Plaintiff's Cross Motion for Sanctions is **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: March 29, 2023